SEYMOUR vs. LAYCOCK and others.

PLEDGE. *(1) When satisfaction of mortgage valid against pledgee.*
ENTRY OF JUDGMENT. *(2) When entry of judgment without formal order therefor, not error.*

1. Where the advances to secure which a note and mortgage were transferred as collaterals have been paid, a subsequent satisfaction of the mortgage upon the record, by the mortgagee, is valid, although the mortgagor, when he paid the note and procured the satisfaction to be entered, knew that the instruments had been so transferred.

2. In an equitable action, where the court, by its written conclusions of law on file in the action, declares which party is entitled to judgment, and what judgment he is entitled to, a judgment entered by the clerk in accordance with such decision will not be reversed for want of a formal *order* directing its entry. *Stahl v. Gotzenberger,* 45 Wis., 121, and *Wadsworth v. Willard,* 32 id., 238, distinguished.

APPEAL from the Circuit Court for *Chippewa* County.

Action to foreclose a mortgage on real estate, executed by the defendants *Henry Laycock and wife* to one Winans, to secure the payment of a promissory note for $3,700, and ten per cent. interest, made by *Henry Laycock* to Winans or order, dated July 22, 1872, and payable one year after date.

The complaint alleges an assignment of the note and mortgage before maturity, by Winans to the plaintiff, the note having been so transferred by indorsement in the usual way. It also alleges a wrongful satisfaction of record of the mortgage. It prays that the satisfaction be annulled and set aside, and for the usual judgment of foreclosure and sale.

The defendants *Laycock* answered, in effect denying such transfer and assignment, and alleging payment of the mortgage debt to Winans, and the execution by him of a satisfaction of the mortgage, January 13, 1876, duly recorded on the same day.

The following facts were proved, and were found by the court: The defendant worked for Winans, the mortgagee, and paid him some money, after the note and mortgage were given. In the fall of 1874 there seems to have been an accounting between them concerning such work and money, and it was found that the same amounted to more than the mortgage debt. It seems, also, that there was an understanding between them that the same should be applied to the payment of such debt. The satisfaction of January 13, 1876, was executed by Winans pursuant to that understanding.

In April, 1873, Winans indorsed the note, and delivered the same, with the mortgage, to the plaintiff, a banker, as collat-

eral security for certain future credits which he was to have at the plaintiff's bank. There was no written assignment of the mortgage. At that time Winans had overdrawn his account at the bank $800 to $1,000. He continued to do business with the plaintiff through the bank, and, during the ensuing five years, paid into the bank over $30,000. The balance of his account was sometimes in favor of the bank, and at other times in favor of Winans, but it does not seem that the account was ever stated or adjusted between them.

December 4, 1875, the plaintiff accepted a draft drawn on him by Winans for $1,000, payable one year after sight, with ten per cent. interest; and June 27, 1876, he accepted another draft for $2,000, also drawn on him by Winans, payable in six months, with like interest. These acceptances were for the accommodation of Winans, and the plaintiff paid the drafts at maturity.

These two drafts represent the whole amount of Winans' indebtedness to the plaintiff, all other credits given him by the plaintiff having been fully paid.

The principal questions litigated on the trial were: 1. Did *Laycock* know when he paid the mortgage debt — that is, when he accounted with Winans in the fall of 1874,— that the note and mortgage had been transferred by Winans? 2. Were the note and mortgage transferred to the plaintiff as security for all the future overdrafts of Winans, without regard to the time when made?

The findings of fact answer both questions in the negative. The finding on the last question is as follows:

"10. That shortly after said Winans received said note and mortgage from *Laycock*, he delivered the same to the plaintiff as collateral security, for the purpose of securing to the plaintiff the payment of about $800, then due plaintiff from Winans, and also to secure plaintiff from overdrafts that might be made by Winans on plaintiff's bank during the summer of 1873."

The conclusions of law are all in favor of the defendants. The last conclusion is as follows:

" That the plaintiff is not entitled to a judgment of foreclosure and sale, but that the defendants *Henry Laycock* and *Emma Laycock,* his wife, are entitled to judgment in this action, that this action be dismissed, and that said note and mortgage be delivered up to said *Henry Laycock,* and that the defendant *Laycock* have judgment for the costs and disbursements."

Without further order of the court, the clerk entered judgment for the defendants as indicated in the above conclusions of law.   The plaintiff appealed from the judgment.

The cause was submitted for the appellant on briefs of *J. S. Carr.*

For the respondents, there was a brief by *Bingham & Pierce,* and oral argument by *Mr. Bingham.*

LYON, J.   1. The proof is conclusive that all of the indebtedness of Winans, the mortgagee, to the plaintiff, down to December 4, 1875, the date of the first acceptance, has been fully paid.   If the note and mortgage in suit were transferred to the plaintiff as collateral for credits given by him to Winans during the season of 1873 only, the title to the securities reverted to Winans upon payment of his indebtedness to the plaintiff contracted during that season, and the plaintiff has no further interest in them.   In that event, the satisfaction of the mortgage executed by Winans is operative to discharge it. Moreover, if the tenth finding of fact is upheld, it is conclusive against the plaintiff's right to maintain this action; and it is not material that the defendant *Henry Laycock* had notice of the transfer of the securities to the plaintiff, if he had such notice.

The evidence discloses but one negotiation between Winans and the plaintiff in respect to the transfer of the note and mortgage, and that occurred when the securities were delivered to

the latter in the spring of 1873. The only testimony of the terms on which the securities were so transferred, is that given by the plaintiff's cashier, F. D. Barnett, who negotiated on behalf of the plaintiff with Winans for the transfer. He testifies that the plaintiff was present at the negotiation; but neither the plaintiff nor Winans (both of whom testified in the case) gave any testimony on the subject.

On his examination in chief, Barnett testified that he negotiated the transaction in April or May, 1873; that the note and mortgage were transferred to the plaintiff to secure an extension of credit at plaintiff's bank to Winans; and that such extension was the privilege to draw checks on the bank to the amount of the note. On his cross-examination he sums up the whole transaction as follows:

" Winans came in just before he was going down to run lumber for the season on the Mississippi, and placed the note in my hands with the remark that he wanted to leave it with me as collateral for his account or credit that he expected he would have or wanted of us during the time he was gone, or until he should settle up with the bank; and we replied that we would accept it. We did not look over the account with Winans to see how we stood.

" *Ques.* Has Mr. Winans paid any portion of this amount? *Ans.* Well, he may have paid it, but the account has been open ever since. It has been a running account with the bank ever since. It has been in and out both ways. Winans has not paid the account for which the note and mortgage were pledged. He has paid as much as the note and mortgage amounted to, and more too."

The foregoing is substantially the whole evidence of the terms upon which the securities were transferred.

The transaction was at Chippewa Falls. Winans was about going down to run lumber *for the season* on the Mississippi. His proposition, accepted by the plaintiff, was to leave the note with the plaintiff's cashier or bank as collateral for his

(Winans') account or credit that he expected he would have or wanted " *during the time he was gone;* " that is, during the season for running lumber in 1873. This seems very clear. The proposition that the securities should be so held " until Winans should settle up with the bank," does not necessarily signify anything more than that the plaintiff or his agent should hold them until Winans should pay the indebtedness to secure which they were pledged. We do not perceive how it can be construed as extending the security to debts contracted after the time specified.

In view of his other testimony, the statement of the witness that " Winans has not paid the account for which the note and mortgage were pledged," must be regarded as his construction of the contract to which he testifies, rather than as a statement of fact.

Entertaining these views of the evidence, we cannot disturb the tenth finding of fact. The debt which the note and mortgage were transferred to secure having been fully paid, the plaintiff cannot maintain this action.

2. The judgment was entered by the clerk without any formal order of the court directing him to do so. This is alleged to be irregular practice, and is assigned as error on the authority of *Wadsworth v. Willard,* 22 Wis., 238, and *Stahl v. Gotzenberger,* 45 Wis., 121.

The proposition decided in *Wadsworth v. Willard* is, that a judgment by confession, without action, must be signed by a judge or court commissioner, and is void without such signature. In the other case, an action in equity had been tried as a legal action, and the clerk entered judgment upon a verdict without any order or finding of the court. We reversed the judgment so entered, on the ground, as stated by Mr. Justice TAYLOR in the opinion, that " in equitable actions, where the issues must be determined by the court, the clerk has no authority to enter judgment until the court has in some way declared what the nature of the judgment shall be, and then

the clerk, as the mere hand of the court, enters upon the records the judgment so declared."

In the last conclusion of law the court declared its judgment in this case, and we think that is sufficient authority to the clerk to enter the judgment so declared, although the court made no express order directing him to do so.

*By the Court.* — The judgment of the circuit court is affirmed.